Good morning, sir. I will be the only attorney presenting today. I think we have indicated there will be more than one of us, but it will be just me. Your Honor, this case has a somewhat unusual posture. We raised a number of issues. I am not going to go through all of them. I am going to focus on a few things today. The first thing I want to bring to the Court's attention is this case would not exist, and we would not be in front of this Court, if it weren't for the willingness of Ali to file a false affidavit in the bankruptcy court to create the illusion of invocation of discovery rule. He alleged a completely false timeline in his affidavit to get in front of the Court. Eventually, at trial, it came to light that he was aware of his claims much sooner than his affidavit claim. Also, in the record, there is a conflicting affidavit that is at 230507.1314 that establishes a very different timeline than the affidavit filed in the bankruptcy court, which was at 230507.1310, alleged. I don't recall the memorandum of opinion in March of 2023 of the bankruptcy court saying that he had filed a false affidavit. So is your primary argument on appeal? Are you arguing that the bankruptcy court's description of the facts is clear error? Your Honor, the bankruptcy court transcript reflects— No, the memorandum of opinion. Correct. It does not address the affidavit itself. So is that your argument on appeal? It is. It is one of the arguments in our briefs, Your Honor. Yes, it is. The bankruptcy court is clearly wrong in its description of the chronology of the alleged embezzlement of $800,000 for the visas, then the state court filing, then Riverside's—what's the false fact? No, we're not arguing that. In fact, that's what makes this case somewhat unusual. The bankruptcy court came to the correct conclusions on the chronology in the end. They're simply bringing the— Well, if it got it right, why are you bringing up a false affidavit? What's your legal argument? Or even more specific, how are you harmed by anything that has been entered? You got a dismissal. So the false affidavit created this entire case is what our position—eventually, the bankruptcy court agreed with us that his claims had expired. Take nothing judgment. How are you injured? Correct. So the injury is in the memorandum of hearing, which is unusual because after the court concluded it had no subject matter jurisdiction, the Rule 12 required the court to dismiss the claims against the non-debtor appellant and the non-debtor appellee, the plaintiff in that case. The court did not dismiss the claims. Instead, it issued a judgment, and then it issued a lengthy memorandum opinion, which is in a sense is an advisory opinion on the claims that the court said it had no jurisdiction on. But when you file an appeal, you file an appeal from a judgment, not from a memorandum opinion. Yes, Your Honor. We recognize that. So you received a favorable judgment. So I guess I don't understand why this isn't just a frivolous appeal. Yes, Your Honor. That came up in the district court as well, and we acknowledge that the essence of the judgment is sound. Our concern is, and we feel that the findings in the memorandum opinion that were made at the behest of the counsel for plaintiff at that time, the judge acknowledged he would have no jurisdiction to make such findings. In the court, Judge Norman acknowledged that, but he nonetheless did that anyway. So in the open court, he said, if I don't have jurisdiction on these claims, I don't see how I can make any fact findings. Now, the memorandum opinion is almost, in this case, Your Honor, I know it's titled memorandum opinion, but it is a series of findings of fact that are non-binding on any party. And so it is an advisory opinion. It's like a recommendation letter to the state court, saying, here's what I really think of these people. But you're saying it's not binding on anyone, so it's a recommendation, but it doesn't have any race judicata or issue preclusion impact on the state court. You're correct, sir. We agree with that. The problem we see, Your Honor— It wasn't—the memorandum wasn't adopted in a judgment. There is no judgment, right? Your Honor, the trouble we see with this is the entire concept of advisory opinion is supposed to be that the federal courts do not issue opinions on matters that they have no jurisdiction on. What's the relief? Let's say this is what I think. This is what I would— If this even were an Article III court, it's an Article I court. So one question I have is, why can't a bankruptcy court issue an advisory opinion? If it weren't for the bankruptcy court? It's an Article I court. It's not subject to Article III. What's your case law that it can't give an advisory opinion? Number one, and number two, if it can't issue an advisory opinion, what's the relief? That the advisory component of that opinion should be struck. The findings that are advisory in nature should be struck from that opinion. That would be the relief we are seeking. And what's your best authority anywhere that a circuit court would order that language that you claim as advisory should be stricken, even though the judgment is in your client's favor? Correct. So what's your case authority for that? Well, the Supreme Court authority that we cited in the brief, Your Honor, basically prescribes the advisory opinion. Yeah, we know that advisory—but do you have any authority that the relief you get is that we go through with a red pen and strike out what you think is advisory? Well, the court can instruct the lower courts to strike the findings that are advisory in nature. This court can't do that, and that's one of the reliefs we are asking in the alternative. To say this court cannot do that, then the court should instruct the lower courts to strike the advisory findings from the memorandum opinion. Your Honor, we think this is a slippery slope. Because the court has the ability to write a memorandum opinion on a case that is in front of it, it can't use that platform and weaponize it to opine on things that are not in front of it. I mean, so long as we title it a memorandum opinion, we can say whatever we want in it and say this is what a federal judge thinks. Is that what we want them to do? But I guess the critical assumption you're making is that the court had no jurisdiction over anything. But what's your authority that it didn't have jurisdiction over Mr. Ali's claim against the property? In other words, I thought the Bank Street judge said, as to that claim, the fiduciary breach claim and any appropriate relief, we do have jurisdiction. This is around footnote 7 in the memorandum opinion. No jurisdiction as to the rest, but I've got to resolve that claim against the property. And in resolving it, I'm going to give you the narrative history of what happened. And that's where all the facts are that are disparaging to your client. Your Honor, by the way, I'm really hearing it. So sometimes if I'm looking closely. No, that's fine. I'm trying to make sure I got your questions correct. So the question that I'm hearing is there are two parts. One is the jurisdiction to the rest of the debtor, Riverstone, and to which the court concluded the claims were time-barred. Okay. And you haven't yet defended that. And we accept that. That is a correct holding. The claims were indeed time-barred. We're not disputing that. Well, no, I'm asking you to defend that because, of course, Mr. Ali is strongly disputing it. Why? You're agreeing that he filed the fiduciary breach claim in state court in a timely way, yes? In state court, the matter that's still pending. That was filed timely. Yes, sir. Okay. So you were on notice of the fiduciary breach claim. No, the state court claims are still pending. I know. And I'm saying you're not saying those weren't timely filed, are you? None in the state court, Your Honor. Okay. And then four years elapsed. Only after that does Riverside declare bankruptcy. How could Ali have anticipated? He can't control. So how does his claim get extinguished because your client waits until after the statute of limitations to then declare bankruptcy? So Mr. Ali's claim in the state court remained undisturbed. I know that. Riverside was not a party. I know that. But you've got to defend the bankruptcy court's ruling here that asking for the remedy of constructive trust somehow was untimely, even though he made the exact same case, and it's still pending, timely in state court. What's the authority that a remedy, not a claim, is untimely in bankruptcy court? Well, so the way I would explain that, Your Honor, is in the state court they had to have an adjudication of the claim, that they had a constructive trust or not. That adjudication had not occurred yet. But he can't speed it up. Where I take it, it's coming close to adjudication, but he can't force the judge to give a disposition that he then presents to the bankruptcy court. He's waiting. But how does that mean he waited too long? Because Riverstone was not a party in that case. Okay. I agree. And his claims accrued in 2017. I agree. So the case continues in the state court. If he gets an adjudication in state court in his favor, then he will have a claim against the estate, assuming all the other facts align that this is the property. Right? The question we have here is, Your Honor. That sounds like an abstention argument. That doesn't sound like a statute of limitations. That sounds like you should have said to the bankruptcy court, abstain, wait until we get that state court resolution. We did. But the court didn't rule that way. We did ask for an abstention. But it didn't rule that way. It ruled saying a constructive trust, which is a remedy, is somehow untimely. And I keep coming back. Where is your bankruptcy court authority to support that ruling? So the court, in its judgment, in its memorandum of opinion, did say it abstains as to the claims against the law firm and Mr. Chaudhary. And the only way to get to the constructive trust is through those claims. That's the path. And the court said it either has no jurisdiction or in the alternative it abstains. We think that in itself is also a problem. If the court has no jurisdiction, it can't say it abstains. Yeah, that's back to the jurisdiction argument. I guess here let me try to ask my question one more time. Give me a case authority. Case. Give me authority that a bankruptcy court, a claim before it, is untimely, even though it was timely filed and it's still pending in state court. Your Honor, I think I have an authority in the brief, but I will have to look for it. Okay. That's fine. You get to stand back up. And I'll come back. If I don't find it in the rebuttal time frame, I will file a supplement on that. But I believe we did have an authority on that, on how the constructive trust should have been processed if it was to be pursued in the bankruptcy court. It's in our briefs. I'll make a note of that. Yeah. Okay. So the other issue we have, Your Honor, is that it's a question of, well, Rule 12. I covered that briefly. It required the court to dismiss the action, not issue a judgment. And once the court determined it had no subject matter jurisdiction, Rule 12 required it to dismiss it, not try to abstain, not try to issue a judgment, and a lengthy memorandum of opinion. And the court did not do that. Then the law on the advisory opinion, I think the court already said, you know, we are very familiar with it, so I'm not going to go through that. But the idea behind that, Your Honor, is what I want to make sure I connect that dot here for this court. The idea behind the bar on advisory opinion is we do not want federal judges to opine on matters that they don't have jurisdiction on. We don't want them to say, this is what I would do hypothetically. Yet this opinion goes out and does that again and again and again, while acknowledging it. And the language on the opinion very much says that. And it covers those things and says, if given the opportunity, this court would rule this. If this court had the jurisdiction, it would award that. There is no purpose to any of that other than creating prejudice in a pending litigation in the state side. Okay. You're just repeating your argument. You've already made that argument once. Yes, Your Honor. I will move on. And you've saved time for rebuttal. The other argument I want to bring to the attention of the court is that there is no final judgment against the law firm and Mr. Chaudhary. All right. Your initial time has expired and you've saved time for rebuttal. Thank you. Yeah. Thank you, Your Honor. Okay. Mr. Patterson. Thank you, Your Honor. And may it please the court. Odd case, odd facts, and I know we're here on relatively odd or esoteric arguments. But I think if we step back and take a look at a few things, it makes a lot more sense. All right. Bankruptcy courts are, by their nature, equity. They're courts of equity. And so they're always. That's what they do every day is equity, equity, equity. And so that's why the facts are really important here. Mr. and Mrs. Lee immigrated here legally. We do know the facts. We've got the facts. We're going to go. And so it was important, and this is important, thus the $800,000. Yes. And I think that when the timing of their knowledge, I think Bankruptcy Judge Norman generally got the facts correct. None of those facts have been challenged, and I think the court can rely on his findings. I think his timeline is correct. Small pieces, and I think this goes to the equitable tolling, which is important. If you go back and look at the timeline, you're going to notice something really important. Judge Norman says that Mr. Chaudhary was fired on October the 26th, 2017. He then makes the conclusion that that is when the cause of action accrued for a breach of fiduciary duty. I disagree with that a little bit, but the interesting part is when was the bankruptcy filed? October the 29th, four years later. Four years and three days. All right. I think that's important to understand what's happening in this case. This is, there are lawyers everywhere. That's all we're dealing with is lawyers, right? Mr. Chaudhary is a lawyer, has been a lawyer for a long time. He has a lawyer here, but in the bankruptcy case, understand, and I think it's important to know that we have someone thinking strategically. Okay, but we have hard facts. We have lots of lawyers. Why did this court make a reversible error, and what's the best case for? Well, he didn't consider equitable tolling, and I think I put it out there, and it's the McManamy Indian Tribe case, which sets out the M-E-N-O-M-I-N-E-E Indian Tribe, which sets out kind of the elements of equitable tolling, and it says two elements have to be met. One, you have to have pursued your rights diligently, all right, and there have to be extraordinary circumstances that prevented your timely filing. And I'm sorry, that's a U.S. Supreme Court case, 136 Supreme Court 750 from 2016. Which you cited, I'm assuming. Which I cited in my brief. It's in there. Pursued rights diligently. Well, what did Mr. Ali do, and what does the evidence show? Well, he filed a bar complaint, right? He went to three mediations, three mediations with Mr. Chaudhary, unsuccessfully. That's in the record 547. It's in our pretrial stipulation prior to trial that was entered. He filed a state court lawsuit timely, right? And then when he had to, when he found out about the bankruptcy, he had no choice. That's all he could do. This is the only place he could end up. And he did it quickly? Well, I went back last night, and I looked, and this isn't in the record, all right? But I can tell you that he came to me in May. No, what would be in the record is you're pointing out the petition was filed, whether it was strategic or not, just after the statute of limitations expired. Yes. How soon factually did he file his adversary complaint? Seven months. Seven months. So your argument, that's diligent, that's quick. Is that what your argument is? He didn't get notice of the bankruptcy, and so to measure it from the petition date is a little bit unfair, right? Because had he been given notice, as a regular creditor would, and he would have known immediately, he would have had more options, right? But he didn't find out until the testimony in the record is the first quarter, the beginning of 2022. And that's important because it's something he couldn't have done at that point in time. You have a 90-day limit to remove actions. So what would be the right, the clean thing to do? Go to state court, remove that, let bankruptcy judge Norman then try this case in a timely manner. We wouldn't have had all these problems. But we did. The 90 days had run. Rule 9027 cuts that. Well, there's another window that's not applicable, but 90 days from the petition date or 30 days after the stay wasn't lifted on this. So he couldn't have done that. He came to see me. His only option, he couldn't do anything with this property sitting in a Chapter 11. At the time, the case was still a Chapter 11. He had no option because, I believe it's in the record, but at the time, there was a pending motion to sell and a pending proposed Chapter 11 plan. A sale would have stripped him, free and clear of liens, under 363. That property is gone with an order with all rights stripped away from it. It's a clean piece of property, which is what they were trying to do at the time. A confirmation of a Chapter 11 plan could have or would have, in this case, done the same thing. It would have cleaned, it would have sanitized this piece of property, and it would have barred Mr. Ali from ever asserting or following his money into that piece of property. Your claim is, as found by the Bankruptcy Court, that the $800,000 that the fraudster took from him was in that property. That's right. If you look at the opinion, he did the tracing. We didn't obtain the bank statements until discovery in the adversary proceedings. So we weren't sure that it was our money. The discovery showed it was our money. And we thought it was our money, and why we thought it was, was the timing of the purchase. The Bankruptcy Court found that it was your money. That's a funny fact. We're still back just at the Bankruptcy Court. I don't remember the case it cited, but it said you're too late. Is your response, we weren't too late, and here's the case that says we weren't, or we were late, but it should have been equitably told? Is it both, or is it just the equitably told? It's both. Okay, and so tell me the first. You weren't too late because? Because breach of fiduciary duty, there can, Bankruptcy Judge Norman treated the breach of fiduciary duty as a unitary breach and act and cause of action. We don't believe that's correct, right? He breached his duty by not providing legal services, right? He just didn't do anything. But when he took our money and he deposited it and he used it for his personal benefit, that's a separate breach. We had no way to know that happened. The testimony in court was we didn't even know about Riverstone or the Haggerston property until 2021. You argued in front of Judge Ellison in the August hearing, didn't you?  Did you make that argument that, oh, the fiduciary breach cause of action, you didn't? I don't recall, but I'm not going to say I did. I don't think so because now I think it's sort of I'm thinking about it because I'm concerned about this, but I'm not sure I remember reading that in front of Judge Norman or Judge Ellison, that in fact there is a fiduciary claim that's still pending in state court that dates from the original, but the one in federal bankruptcy court, the accrual began when you found out that the money was dropped into the hotel. Is that the argument? Yes. Okay. That's right, and it's a single-family residence. Oh, okay. No, that's okay. It's just Mr. Chatteroo was living there. He bought himself a large estate. But second, and my primary argument, which I did argument, is that, Judge, it doesn't matter because of the facts. You should equitably toll whatever, whatever you find, right, because what I tried to do is bring Judge Norman to look closely at the facts and to understand that Mr. Ali could not have done anything differently. It was impossible, including the action of having to file the adversary proceeding in bankruptcy court because of 1334E. He could not have asserted that claim in state court, in Fort Bend County. Couldn't have done it. But in the Fort Bend County, he did ask for all legal and equitable damages. Correct. That couldn't have included constructive trust? Not once the bankruptcy was filed because 1334E vests exclusive jurisdiction in the bankruptcy court. So even if he had pled it, he couldn't have pursued it. And so my point here and to Judge Norman is what is a Mr. Ali to do? He was stuck because of the actions of Mr. Chaudhry. He didn't sit on his rights. I mean, you can go through the list of all the things he did to try to collect and find out where his money was. Give me billing records. Give me an invoice. What did you do? Please return my money. Let's say you've convinced us either on tolling or that, in fact, the cause of action filed in the federal court is timely, just as the state court is. What's the relief? The relief is to vacate Judge Norman's order as it relates to two things, equitable tolling, right, because he does address it, and also I believe he just fundamentally is wrong on the constructive trust, right? He could determine these claims and provide Mr. Ali a remedy. He could do that. Even though the underlying bankruptcy has been dismissed? Absolutely. All the creditors? Okay. One hundred percent. You know this area of law better, and this is helpful. I guess this goes to the jurisdictional argument that he was pressing more than the untimeliness argument, which is did he, Judge Norman, have jurisdiction over this adversary complaint after all the creditors have been paid, bankruptcy dismissed? Double legal. This court's opinion, double legal is it. Subsequent facts don't change jurisdiction. Jurisdiction is a point in time when the case is filed, right? It doesn't matter, I shouldn't say, at all, but generally I can't think of a circumstance, especially given the language in double legal, and I won't go through it, but the site is 936 Fed Third 260. It's cited throughout my brief. It's this court's opinion out of 2019, but it does two things, Judge Christensen, it does two things. It says that the time of filing rule applies in 1334B jurisdictional cases, bankruptcy cases, which that had not been decided before here, right? But he said, yes, it applies, and then it goes on to describe why that's efficient and why that's the rule, and subsequent facts don't change jurisdiction because the court would be forever redetermining jurisdiction over and over and over every time something factually happened. And so to come in here and say, and that was the goal all along. I don't think Mr. Chaudhry understood that, but that was the goal. That's why he rushed and raised from someplace, I don't know where, but he raised another two million dollars to come in and pay these claims. It was so suspect that bankruptcy Judge Norman held a hearing and made this source come in and testify, where did this two point something million dollars come from? And I still, I'm not real clear, but the money came in and they were rushing to pay these creditors to try and get this bankruptcy case dismissed, for I don't know why, other than they thought, oh now it's all going to go away. They were just wrong. They were wrong on the law, I believe, and that we've argued. And jurisdiction remains. Jurisdiction is determined when we file this adversary back in May of 2020. I'm losing track of years now, 2022 I think. Yeah, May of 2022. At that moment in time, the bankruptcy case was still a Chapter 11. They were creditors. The court had jurisdiction over that property, Riverstone's property. Riverstone had proposed a plan. I think there was also a motion to sell. So I can't imagine a scenario where jurisdiction is an issue in May of 2022. And I think everything after that is generally a red herring to say, oh we paid the creditors in the bankruptcy case. So what? Okay. The court, Judge Norman had discretion at the dismissal of the bankruptcy case to dismiss the adversary, but he chose not to. We literally were standing there ready to start trial. Literally. It was the same day. Or we were at pretrial, or we were at first day of trial, which was back to back. So we were literally starting trial. And he said, no, I'm going to try the case. We had worked this case all along, and I think he knew a lot of the facts. And I think you read his opinion, and it gives this court a sense of what he felt about what was happening. And I think he even says, I'm reluctant, the way I rule. I think he was just mistaken. And I think he could have given Mr. Ali the relief that he wanted to give him. You read the opinion, you can see what Judge Norman wanted to do that he thought he couldn't do. And what I need this panel to do is tell him it's okay. You can provide that relief. That authority is equitable tolling. That authority is equitable tolling, 100%. You'd think there'd be bankruptcy court case law on this, because wouldn't this scenario occur all over? It's not that unique. In other words, you've got a fraudster accepting the facts as found, embezzles the plaintiff's money, quickly puts it in a new entity, waits until the statute of limitations expires, declares bankruptcy, and then plaintiff comes in and gets told, oh, even though you couldn't control where you did it, that's what happened to your client, you're saying. Yes. So why, I guess, why don't we have more on-point authority that there had to be equitable tolling for the state court matter that's pending but can't get a constructive trust? And I'll tell you, I was a little surprised as well, but I can tell you from my experience, it just doesn't generally play out in this kind of a perfect storm fashion.  And because someone finds out, right, wasn't so good at keeping it a secret, and by buying it in an LLC and not providing any information on this money of where it went, I mean, you've got to understand as a client, do I know what my lawyer's doing in his personal life? Do I know he has an LLC set up or a separate bank account? No. I mean, I can look at my check. Yeah, he deposited it in his operating account, but do I know where it went from there? I mean, you're really starting from zero to try to find out what this man, my lawyer, my ex-lawyer, did with my money. And literally the testimony in the record shows that Mr. Ali went and hired someone to help him. I have no idea where to even start in this huge universe. I sense that Judge Norman thought you'd get vindicated maybe in the state court. Maybe. And that's their big concern is that the facts will then bleed into it. Can you still get at the property? I don't know the answer to that. I don't know. And I say that. I mean, over and over again he's saying I don't want to disturb the pending state litigation, the same fiduciary duty breach. I don't want to disturb it. I read that as sort of him saying you're still going to be able to get relief maybe, and therefore why do you need to reopen? I don't read it as he. I read it as, a little bit differently, just knowing and practicing in front of bankruptcy Judge Norman. I read it as saying I don't want to step over this line. I don't want to presume to do your job, Fort Bend County District Judge. And if I don't have clear authority, I'm going to let you do it. Here's what I think. Here's what I found. I took all this evidence, and this is what I would have done. But instead he said statute of limitations, and you're saying that's wrong. If we were to agree with you in remand, would he still be able to perhaps enter a dismissal based on abstention? No. There's no mandatory abstention because it's a court proceeding. Again, this is why I think 1334 is so important. 1334E says you have exclusive jurisdiction, exclusive. That means you can't give it to anyone. I mean district court, I mean there's a linear jurisdictional line there between the district court and the referred to bankruptcy court. But it's exclusive, and this is what I obviously didn't explain very well to Judge Norman. But there is nowhere else to go to get this in a judgment. Nowhere. Now look, as a practical matter, today the bankruptcy has been dismissed. So if it was refiled, 1334 doesn't apply. Of course, there's no bankruptcy. But what we have is an adversary that was filed when it did. And double legal tells us that's all we need to know. That's all we need to know. And so Judge Norman could very easily, very clearly say, all right, I got the green line on equitable tolling. We're talking about literally three days. Literally three days. That's what we're talking about. And if he says that, he's told us what he's going to do. That's why they've raised these arguments. Judge Norman is very transparent, and he listened intently over two days of testimony. And he told us what he's going to do. And what do I think? I think he will lift that out, he will adopt the rest of his findings, and we'll be done. It's that easy. And I've addressed the other issues in my briefing. I know I'm way down to the end, but if you have any other questions on any other issues, I don't think there are the continuance and the non-appearance and the debtor. I think we've addressed and Judge Norman's addressed, which haven't appealed. I thank you for your time. Thank you, Mr. Patterson. Yes, sir. Mr. Shahla for rebuttal. Your Honor, one thing I want to reiterate, and I want to, because it's easy to get lost in translation, is there is no connection between whatever Mr. Ali paid to Riverstone. Because the only connection that everybody's using is based on non-binding findings that the bankruptcy court made. There is no binding finding by any court of competent jurisdiction yet on that matter. The testimony at trial indicated a different property in which that money went, not even this property. Now, what is not being addressed is Riverstone was not a party to the state lawsuit, nor was there any constructive trust claim raised in the state lawsuit. They were raised for the first time. But it wasn't a party because in 2018 he didn't know Riverstone existed. Sorry? He didn't know. Ali didn't even know Riverstone existed. I'm not sure even if it did as an entity. It did. It did or he did? So in the record there is evidence, and I was quickly searching. I don't have the Court of Appeals reference for it yet, but I found the district court reference. There was in the 1257.1267, the record on appeal in the district court, where Ali was aware in 2017 about Riverstone, the property owned by Mr. Chaudhary. In fact, he used it for some other things. I mean, he was well aware of that at that time frame. He knew, and he chose not to bring Riverstone into the state lawsuit. He did not invoke constructive trust in the state lawsuit. And I still owe courts some authority on that, and I'll have to find it and file it separately. The other thing that I think we need to make sure of is that there was some conversation about why the bankruptcy was dismissed. On his prayer for relief in the Fort Bend complaint, final line he says, all other damages, general and special, in law and in equity, to which plaintiff may show himself justly entitled. Why wouldn't that encompass constructive trust? All other relief in law or equity. Okay, but you just said he didn't. The difference is between that and the rest of the Riverstone. Riverstone's property is not connected to that lawsuit or to that claim. It's only because of what transpired in the bankruptcy court that we're even attempting to make that connection, while acknowledging that those are non-binding findings. Why don't you address his primary legal argument? Was their jurisdiction double legal, distinguished double legal, and if there was jurisdiction, is he wrong in how he applies equitable tolling? Just those two questions, and they're legal. The jurisdiction as to Riverstone was legal. We are not disputing that, and that was fine. If the jurisdiction as to the non-debtor parties that we are contesting, that court never had jurisdiction on that. But it was a claim against the property, and it was filed before the dismissal of the bankruptcy. After it had expired. That's back to the statute of limitations, so that is the other question. He says equitable tolling, and he makes the subsidiary argument that, in fact, the claim filed in federal court related to a later in time sort of hiding of money. Yes, and, Your Honor, what we are positioning is that the timeline he award to argue and urge equitable tolling is false. He had knowledge of this property. There was no reason for it. He chose not to act on that information for five years. But we know Judge Norman did not make that finding a fact. He did not say, oh, I'm not tolling equitably because your version of the facts is correct. That's nowhere in the memorandum of it. So, Your Honor, I mean, our position is Judge Norman's findings on all of that are non-binding other than for the constructive trust, right? So he basically said they are time-barred. Yeah. And he considered all the evidence, and even without the benefit of the fact that he knew in 2017, which Judge excluded at that point, and he excluded that evidence, and it's in the district court's record, but bankruptcy court chose not to accept that into the evidence, and we put it in the bill of review, that he was aware as early as 2017 about Riverstone's rights and the property, and Mr. Chaudhary's ownership of it. So there is no equitable tolling possible. Okay. All right, thank you, Mr. Chaudhary. The last— Your time has expired, and your case is under submission. Last case for today.